## STATE OF WEST VIRGINIA

**FILED**

*In re* **M.B.**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 19-0375** (Ohio County 18-CJA-89 MJO)

## MEMORANDUM DECISION

Petitioner maternal grandfather J.B., by counsel Richard W. Hollandsworth, appeals the Circuit Court of Ohio County's March 19, 2019, order terminating his custodial rights to M.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period based on an incorrect standard of evidence, failing to follow the requirements set forth in *Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009), and terminating his custodial rights without granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed a child abuse and neglect petition alleging that six-year-old M.B. was abandoned by his mother and left in petitioner's care. The DHHR reported that petitioner failed to provide proper medical care to M.B, including treatment for a condition which caused M.B.'s toe to appear "completely black" and "swollen." The DHHR further alleged that petitioner's home was "in a dilapidated state and filled with clutter," including a hallway full of toys and old rugs that was "waist-high" at its lowest point, and "almost to the ceiling at its highest point." The yard of the home was full of scrap metal and debris. Additionally, the DHHR alleged petitioner did not ensure that M.B. exercised proper hygiene and noted that the child was not "potty

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

trained." During the DHHR's investigation, the child described that he suffered from "itches that won't go away." Petitioner denied that bed bugs were in the home, but DHHR workers observed a "bed bug trap box" in the kitchen. Finally, the DHHR alleged that prior referrals were received regarding petitioner's care of M.B. and the family previously received services, such as "[a]dult life skills . . . in August and September of 2016, and from January, 2017 through July of 2017. Safety services were put in the home from September . . . 2016 through March . . . 2017. Supervision was put in the home from May . . . 2017 until March . . . 2018."

Later in August of 2018, the circuit court held a preliminary hearing and the DHHR presented testimony and photographs consistent with the allegations in the petition. Further, the DHHR worker testified that he sought medical treatment for M.B.'s infected toe prior to removing the child from petitioner's home, but that petitioner did not fill the prescription provided as a result of that treatment and the medication was never utilized. Petitioner presented no evidence. The circuit court ultimately found that M.B. was in imminent danger and ratified his removal from petitioner's home.

In September of 2018, petitioner stipulated to the allegations that he failed to provide appropriate housing, the home was infested with bugs, the child exhibited poor hygiene and was not "potty trained," and the home and yard were unsafe for the child. The circuit court accepted this stipulation and adjudicated petitioner as an abusing parent. Petitioner filed a motion for a post-adjudicatory improvement period, and the circuit court scheduled an evidentiary hearing on the motion for a post-adjudicatory improvement period in January of 2019. In the interim, petitioner was ordered to participate in a forensic psychological and parental fitness examination and completed that examination in October of 2018.

At the hearing on the motion for a post-adjudicatory improvement period, petitioner testified that he would participate in any services provided by the DHHR. However, petitioner admitted that he previously participated in services designed to address his unsafe and unsanitary home when M.B. was four years old and agreed that the current petition alleged the same issues. Petitioner asserted that he remedied several conditions already, such as cleaning the yard and treating for vermin and testified that he needed to clear M.B.'s room of clutter and finish clearing the yard, but, afterwards, the home would be suitable for the child.

A DHHR worker testified that he last visited petitioner's home in November of 2018 and that many of the unsafe and unsanitary conditions still existed in the home, such as "relatively high" stacks of scrap metal, pests in the kitchen, and a partially blocked upstairs hallway. Additionally, M.B.'s foster parent confirmed that the child was not accustomed to using the toilet, but that he was trained to do so within a week of arriving at their home. A Wheeling city building inspector testified, at the evidentiary hearing, that petitioner's home had no furnace and was heated by space heaters only. The inspector explained that the home could be condemned based on this lack of a permanent heating supply. Further, the inspector noted "numerous electrical hazards," fire hazards, and a failing roof. A service provider testified that she worked with petitioner for four months during the pendency of this proceeding and noticed little improvement. Additionally, the service provider observed bed bugs on her shoes following a visit to petitioner's home and stopped entering the home for fear of spreading the bugs to other clients.

2

Petitioner's forensic psychological and parental fitness examination, completed in October of 2018, was admitted into evidence. In the report, petitioner was quoted as saying, "I don't know why I'm involved in [Child Protective Services]. I guess the welfare snuck in and took my grandson." Further, petitioner was quoted as saying, "They are trying to say his toe was black. It wasn't black. It was a little brown." Petitioner's examination results indicated that he "likely [did] not have a basic grasp of the child's needs." The psychological examiner testified that petitioner's overall "IQ" score was in the "borderline intellectual functioning range" and his reading and writing comprehension corresponded to a kindergarten level. During the examination, petitioner was "minimally willing to admit to some problems." The examiner opined that, based on the lack of change after past services and petitioner's current lack of insight, there was a small likelihood of success with additional services. Based on the evidence presented, the circuit court found that petitioner did not provide clear and convincing evidence that he was likely to fully participate in an improvement period. The circuit court found that petitioner did not appreciate the extent of the changes that were required and lacked insight into the issue of the child's continued use of diapers at his age. Accordingly, the circuit court denied petitioner's motion for a post-adjudicatory improvement period.

The circuit court held a final dispositional hearing in February of 2019, where petitioner moved for a post-dispositional improvement period. In support, petitioner proffered that certain improvements were made to the home since the prior hearing and otherwise relied on evidence presented during the January of 2019 hearing. The DHHR objected to petitioner's motion and presented recent photographs of the home in contradiction to petitioner's proffer. The circuit court found that the photographs of the home were taken in February of 2019 and "show[ed] little improvement in the home," which the circuit court characterized as "deplorable and unsafe." Additionally, the circuit court noted that it previously found that petitioner did not "appreciate the extent of the changes that need[ed] to be made" and "that remain[ed] true" at the dispositional hearing. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of M.B. to terminate petitioner's custodial rights. Accordingly, the circuit court terminated petitioner's custodial rights by its March 19, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

---

[2]M.B.'s biological parents' parental rights were terminated during the proceedings. The maternal grandmother's custodial rights were also terminated. According to the parties, the permanency plan for the child is adoption in his current foster placement.

3

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period.[3] Petitioner asserts that he presented clear and convincing evidence that he was likely to fully participate in an improvement period based on his participation in services. Petitioner objects to the circuit court's findings that he lacked insight into the conditions of neglect and stresses that he made admissions to allegations in the petition as proof that he acknowledged the neglect. Finally, petitioner argues that the circuit court applied an incorrect standard when ruling on the motion by considering whether petitioner was likely to improve during an improvement period. Petitioner emphasizes the correct standard is a demonstration "by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). Upon review, we find that petitioner is entitled to no relief.

Petitioner's argument that circuit court incorrectly heard evidence concerning his potential to improve ignores several of this Court's prior holdings. "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily,* 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000). However,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator

---

[3]In support, petitioner asserts that he is a psychological parent of M.B. However, petitioner never asserted this argument below and the circuit court did not hear evidence as to whether he was a psychological parent. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, any argument on appeal predicated on petitioner's assertion of psychological parent status will not be considered. However, it is important to note that even if the circuit court had found petitioner was the child's psychological parent, it would have had no effect on the decision to deny petitioner a post-adjudicatory improvement period. Regardless of his designation as either a custodial or psychological parent, the record shows, as more fully set forth herein, that petitioner failed to satisfy the necessary burden to obtain a post-adjudicatory improvement period. Accordingly, he is entitled to no relief.

4

of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002). Here, the circuit court correctly considered evidence regarding petitioner's potential to improve during an improvement period. As described in the holdings above, a custodian's acknowledgement of the conditions of abuse and neglect is critical to their potential to improve their parenting. In this case, multiple witnesses testified that petitioner minimized the severity of the deplorable and unsanitary conditions in the home and his failures in parenting M.B, such as foregoing toilet training. More importantly, while petitioner testified that he remedied many of the conditions by January of 2019, the evidence presented one month later by the DHHR showed "little improvement" in the home. This disconnect in petitioner's attempted remedies and the reality that the conditions presented raise serious concerns that petitioner failed to fully acknowledge the conditions of abuse and neglect and, in failing to do so, would not be able to remedy them. Therefore, the circuit court did not err in considering this evidence.

We further find that the circuit court properly denied petitioner's motion because no improvement was likely. In addition to minimizing the conditions of neglect, petitioner admitted that he was previously provided services for the same conditions that gave rise to the instant petition. Petitioner explained that, in August of 2016, the DHHR intervened to remedy the condition of his home, which he admitted was filthy, unsanitary, and roach infested. Despite the provision of those services, petitioner's home returned to an unsafe state. Moreover, petitioner was provided services for four months during these proceedings and the service provider noticed little improvement during this time, which was reflected in the photographic evidence presented at the dispositional hearing. The same services that petitioner would have been provided during a post-adjudicatory improvement period were provided during the underlying and earlier proceedings to no avail. Based upon petitioner's lack of improvement during services prior to and during this proceeding, we find the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Petitioner also alleges that the circuit court erred in failing to adhere to the requirements of *Maranda T.*, which provides as follows:

> Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

*Maranda T.*, 223 W. Va. at 513, 678 S.E.2d at 19, syl. pt. 4 (citing syl. pt. 4, *In re Billy Joe M.,* 206 W. Va. 1, 521 S.E.2d 173 (1999)). Petitioner states that the circuit court and the DHHR were

aware of his limited intellectual functioning and that he was functionally illiterate. Thus, according to petitioner, the DHHR could only make a "thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance," as required by the *Miranda T.* Court, via an improvement period. However, *Miranda T.* does not mandate that a parent with limited functioning necessarily be granted an improvement period to make the requisite determination; this is clear when considering that "[t]he determination of whether the parents can function with such assistance *should be made as soon as possible* in order to maximize the child(ren)'s chances for a permanent placement." *Id.* (emphasis added).

Petitioner's position would require that an improvement period be granted in every case and would negate the circuit court's inherent discretion in awarding or denying improvement periods. In this case, the DHHR employed a psychological examiner to evaluate petitioner's capacity for parental improvement given his intellectual functioning, motivation to improve, and acknowledgement of the instant issues. The examiner opined that petitioner had little chance of success at improving his parenting based on his lack of insight into the issues and prior participation in services for the same issues. Additionally, petitioner was provided services during the duration of this case, but enacted "little improvement" of the conditions. Based on our review of the record, we find that the circuit court complied with the requirements of *Maranda T.* and determined that petitioner could not care for the child with long-term services. Accordingly, the circuit court did not err.

Next, petitioner argues that the circuit court erred in terminating his custodial rights as there was a reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Petitioner asserts that he should have been granted an improvement period to correct the conditions. West Virginia Code § 49-4-604(b)(6) provides that circuit courts may terminate custodial rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) provides a list of situations in which there is "no reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected." Petitioner asserts that none of the situations addressed in West Virginia Code § 49-4-604(c)(3) exist herein, but also acknowledges that the specific situations listed in West Virginia Code § 49-4-604(c)(3) is "not exclusive." *Id.* Generally, a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Even though petitioner asserted some improvement in the condition of the home after being provided services, the circuit court found, overall, the home showed "little improvement." Petitioner's history with DHHR shows a pattern of improvement in the home that would eventually revert, and require further services. Upon these considerations, the circuit did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Likewise, as the conditions had not been corrected, the child would have been subjected to the dangerous conditions of the home if returned to petitioner's care. Therefore, it was necessary for the child's welfare to terminate petitioner's custodial rights.

Finally, to the extent petitioner argues a less-restrictive alternative should have been imposed, such as permanent guardianship, we have previously held that

6

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The requisite findings are fully supported by the record below. Further, termination of custodial rights is necessary for the child to be adopted, which is "the preferred permanent out-of-home placement of [a] child." Syl. Pt. 2, in part, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Therefore, we find no error in the circuit court's termination of petitioner's custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 19, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison